E-FILED
Friday, 13 March, 2009 04:41:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

FILED
MAR 1 3 2009
U.S. CLERK'S OFFICE
ROCK ISLAND, ILLINOIS

| | | |
|---|---|---|
| COREY J. ENGLAND and MIDWEST GEMS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO: 09-4017 |
| KENNETH S. FELDMAN and FELDMAN LAW GROUP, | ) ) ) ) | |
| Defendants | ) | |

## COMPLAINT

Plaintiffs, Corey J. England and Midwest Gems, Inc., by and through their attorneys, for their Complaint against Defendants, Kenneth S. Feldman and Feldman Law Group allege as follows:

### PARTIES

1. Corey J. England ("England") is an individual residing in Moline, Illinois.

2. Midwest Gems, Inc., ("Midwest") is an Illinois corporation with its principal place of business located in Moline, Illinois.

3. At all relevant times herein, England has served as the principal of Midwest.

4. Defendant Kenneth S. Feldman ("Feldman") is an individual residing in Huntington, New York.

5. Feldman Law Group ("Law Group") is a law firm with its principal office located at 12 East 41st Street, New York, New York and a regional office located in Huntington, New York. On information and belief, Law Group is the same firm and/or

successor in interest to Law Offices of Stephen E. Feldman, P.C., the law firm where Feldman practiced during all relevant times and said law firm used the same address as Law Group.

6. Feldman is a partner and the Managing Attorney of Law Group, according to its website.

## JURISDICTION

7. This Court has jurisdiction over this matter based on the diversity of citizenship of the parties and that the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332(a).

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a)(2) and (3).

## FACTUAL BACKGROUND

### A.  License Agreement

9. England is the owner of the trademark Iceman and has used this mark in commerce in the sale of jewelry, gemstones and diamonds since at least 1991.

10. In May, 2003, England and MatBros, Inc. ("Mat") entered into a license agreement pursuant to which England, licensor, granted to Mat, licensee, an exclusive license to use the Iceman mark on watches in consideration for an annual licensing fee of $25,000. (Attached as Exhibit A is a copy of the License Agreement).

11. Mat's license to use the Iceman mark was limited to watches only.

12. During negotiations of the License Agreement, England was represented by separate counsel and Mat was represented by Feldman. England's counsel and Feldman together negotiated and drafted the terms of the License Agreement.

13. The License Agreement was for an initial term of three years, from April 1, 2003 through March 31, 2006 with Mat paying a licensing fee of $25,000 each year.

14. The License Agreement contains no provision requiring England to indemnify or defend Mat for any litigation or threats of litigation against Mat relating to its use of the Iceman trademark.

15. In 2004, England became aware that Mat was using the Iceman mark in conjunction with the marketing and sale of jewelry other than watches, in breach of the License Agreement. On two separate occasions in 2004, England sent letters to Feldman advising him that Mat was breaching the License Agreement by using the Iceman mark to advertise jewelry other than watches.

16. In order to promote the sale of jewelry other than watches, Mat was also involved with the development of the websites www.iceman4u.com, www.icemanusa.com, and www.itshot.com that used the Iceman mark in their text and metatags. Feldman had knowledge of Mat's involvement with the development of these websites.

17. As a result of Mat's ongoing breach of the License Agreement and failure to pay the licensing fees, England sent a termination notice to Mat on April 6, 2006.

18. England subsequently made Feldman aware that Mat was also breaching the License Agreement by infringing and misusing the Iceman mark in websites, Internet links and domain names for the advertising and sale of merchandise other than watches and by continuing to unlawfully use the Iceman mark and variations thereof.

B.  **Underlying Lawsuit**

19. On March 26, 2004, Christopher Aire and Solid 21, Inc. (collectively "Aire") filed Civil Action No. 1:04-CV-02370-DAB in the U.S. District Court for the Southern District of New York against England, Midwest and Mat ("Underlying Lawsuit") asserting trademark infringement and dilution of the "Iceman" trademark, among other claims.

20. In the Underlying Lawsuit, England and Midwest disputed Aire's ownership to the Iceman trademark. England and Midwest asserted that England is the rightful owner of the Iceman trademark with respect to the sale and marketing of jewelry, gemstones, diamonds and watches.

21. Mat retained Feldman to represent its interests in the Underlying Lawsuit. Subsequent to Mat's retention of Feldman, Feldman persuaded England to also retain him to represent the interests of England and Midwest in the Underlying Lawsuit.

C.  **Malpractice of Feldman and Law Group**

22. From the outset, the interests of England and Midwest were in direct conflict with those of Mat as a result of Mat's breach of the License Agreement and its continued wrongful use of the Iceman trademark. While England had terminated the License Agreement for these reasons through correspondence to Feldman, Feldman took no action requiring Mat to cure the continuing breach.

23. Despite this clear conflict of interest, Feldman undertook the representation of England and Midwest while at the same time representing Mat in the Underlying Lawsuit until March, 2007.

24. Feldman continued to simultaneously represent England, Midwest and Mat in the Underlying Lawsuit without disclosing the actual conflicts of interest to England and Midwest and without obtaining their informed consent thereto.

25. Throughout his representation of England and Midwest, Feldman failed to advise them to pursue claims against Mat for breach of the License Agreement and misuse and infringement of the Iceman mark.

26. At the direction of Mat, Denis Stepansky had created websites and links using the Iceman mark, which continued to advertise Iceman diamond watches and jewelry or link to said advertisements. Throughout his representation of England and Midwest, Feldman failed to advise them that they had trademark infringement and related claims against Stepansky.

27. Feldman was fully aware of all claims that could have been asserted against both Mat and Stepansky.

28. After England and Midwest retained new counsel in the spring, 2007 a Crossclaim against Mat and a Third-Party Complaint against Stepansky were filed on behalf of England and Midwest.

29. Throughout the Underlying Lawsuit Feldman advised England that he had an obligation to indemnify Mat and pay the attorneys' fees of Mat pursuant to the License Agreement. The License Agreement contains no such obligation.

30. Throughout Feldman's representation of England and Midwest, he issued billing statements to them for legal services rendered on behalf of Mat and accepted payment for these services, knowing that England and Midwest had no obligation to pay the attorney fees of Mat. As a result, England and Midwest paid at least $48,000 in

attorneys' fees, the majority of which were the sole responsibility of Mat. England paid these billing statements in reliance on the advice of Feldman that he had obligation to do so pursuant to the License Agreement.

31. During the discovery process, Feldman repeatedly advised counsel for plaintiff Aire, Todd Sharinn, that Mat would assist Aire in his case against England and Midwest if Aire would license the Iceman mark to Mat or otherwise settle the litigation with Mat. This conduct was directly adverse to the interests of England and Midwest and was not disclosed to them.

32. England advised Feldman of information and documents he had which would conclusively establish that he and Midwest used the Iceman mark prior to Aire but Feldman failed to use this information and these documents to mount a competent defense or to challenge Aire's right to the Iceman mark.

33. During the discovery process, Feldman also failed to provide competent representation of England and Midwest at the depositions, instead focusing on the representation of Mat.

34. Counsel for Aire repeatedly advised Feldman that his conduct throughout the underlying lawsuit constituted vexatious and bad faith litigation pursuant to Rule 11 of the Federal Rules of Civil Procedure.

35. Throughout Feldman's representation of England and Midwest in the Underlying Lawsuit, Feldman made numerous telephone calls from his office in New York to England in this District, sent numerous correspondence from his office in New York to England in this District and issued billing statements from his office in New York to England in this District.

36. In June, 2007, England retained Jacqueline A. Criswell of the law firm of Tressler Soderstrom Maloney & Priess, LLP to represent him and Midwest in the Underlying Lawsuit. When Ms. Criswell came into the case, she realized that England and Midwest had information and documents that demonstrated use of the trademark prior to Aire, had viable trademark infringement and related claims against Mat and had viable trademark infringement and related claims against Stepansky and explained the circumstances of pursuing these claims to England.

37. The State of New York lists Feldman as delinquent in his registration status. (See Exhibit B).

38. But for Defendants' breach of the standard of care in failing to competently represent England and Midwest and continuing said representation despite a blatant conflict of interest, England and Midwest would have prevailed in the Underlying Lawsuit with Aire or at minimum reached a resolution at an early stage of the litigation and would have obtained significant damages from Mat and Stepansky.

39. Feldman breached his duty to fully, professionally and competently represent England and Midwest in the Underlying Lawsuit in one or more of the following respects:

   a. Feldman failed to inform England regarding the conflicts of interest associated with Feldman's representation of both Mat and England and Midwest;

   b. Feldman informed England that he was required to pay for Feldman's representation of Mat in the Underlying Lawsuit pursuant to Paragraph 9 the License Agreement;

   c. Feldman failed to pursue a Crossclaim against Mat for trademark infringement and related claims, as well as a Third Party Complaint against Denis Stepansky for his infringement of the Iceman trademark because he was involved in the establishment of the

       www.iceman4u.com, www.icemanusa.com, and www.itshot.com websites;

   d. Feldman failed and was unwilling to produce England's best evidence of his first use of the Iceman trademark as requested by the Court;

   e. Feldman failed to properly and adequately investigate and/or raise defenses and affirmative matters in defense of the Underlying Lawsuit on behalf of England and Midwest;

   f. Feldman on behalf of Mat willingly and intentionally offered to assist Aire in his case against England and Midwest; and

   g. Feldman was otherwise negligent in representing England and Midwest.

40. But for the forgoing negligent acts, errors and/or omissions of Feldman, England and Midwest:

   a. Would have retained counsel as necessary to protect their interests;

   b. Would not have followed Feldman's advice in the Underlying Litigation;

   c. Would not have paid for Feldman's representation of Mat;

   d. Would have properly investigated and pursued affirmative matters available to them in the Underlying Lawsuit, including, but not limited to, the filing of a Crossclaim against Mat and the filing of a Third Party Complaint against Denis Stepansky; and

   e. Would otherwise have acted in a manner to avoid the negative and adverse economic consequences of the failures, omissions and professional errors of Feldman.

41. As a direct and proximate result of one or more of the aforesaid professional negligent or intentional acts, errors and/or omissions constituting malpractice by Feldman, England and Midwest have been injured and damaged in that:

   a. They did not hire independent and unbiased legal counsel to protect their interests in the Underlying Lawsuit in its early stages;

b. Their interests were not properly represented in the Underlying Lawsuit;

c. They were precluded from asserting valid defenses and affirmative matters and were not permitted to produce their best evidence of first use of the trademark at issue in the Underlying Lawsuit;

d. They had to unnecessarily incur attorneys' fees and costs as well as other business resources associated with the Underlying Lawsuit for Feldman's representation of Mat;

e. They had to unnecessarily incur the cost of the retention of subsequent counsel in order to reduce the damage resulting from Feldman's aforesaid negligent and intentional acts, errors and omissions; and

f. Was otherwise injured and damaged.

## COUNT I

### Professional Negligence

42. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 41 above.

43. Feldman and Law Group violated the New York Code of Professional Responsibility D.R. 5-105 by simultaneously representing England and Midwest, along with Mat in the Underlying Lawsuit, to the detriment of England and Midwest. 22 NYCRR 12.24.

44. Feldman and Law Group violated New York Code of Professional Responsibility D.R. 6-101 by neglecting the representation of England and Midwest, failing to present an adequate defense and breaching the standards of professional care and skill owed to England and Midwest. 22 NYCRR § 1200.30.

45. Feldman and Law Group violated New York Code of Professional Responsibility D.R. 7-101 by failing to zealously represent England and Midwest and

9

intentionally prejudicing and damaging their legal position in the underlying lawsuit. 22 NYCRR § 1200.32.

46. By engaging in the actions and non-action as set forth above, Feldman and Law Group breached the standard of care expected of attorneys in their community and violated the applicable Rules of Professional Responsibility governing the practice of law in the State of New York.

47. As a proximate cause of Defendants' errors and omissions, England and Midwest suffered significant damages, including damages they would have recovered had the underlying lawsuit been properly litigated, damages in the form of attorneys' fees paid to Defendants for incompetent representation of England and Midwest and for legal services rendered on behalf of Mat, for which they were not obligated, damages paid to subsequent counsel England and Midwest retained in the underlying lawsuit and damages in the form of the loss of certain trademark rights in the Iceman mark.

## COUNT II

### Breach of Contract

48. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 41 above.

49. Feldman and Law Group entered into a fee agreement in exchange for which Defendants agreed to represent England and Midwest in the Underlying Lawsuit.

50. In performing the legal services for which they were retained, Defendants were required to exercise ordinary skill and care required of attorneys practicing law in their community.

51. Defendants failed to exercise ordinary skill and care in connection with the performance of these legal services for which they were retained.

52. As a proximate cause of Defendants' errors and omissions, England and Midwest suffered significant damages, including damages they would have recovered had the underlying lawsuit been properly litigated, damages in the form of attorneys' fees paid to Defendants for incompetent representation of England and Midwest and for legal services rendered on behalf of Mat, for which they were not obligated, damages paid to subsequent counsel England and Midwest retained in the underlying lawsuit and damages in the form of the loss of certain trademark rights in the Iceman mark.

### COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing

53. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 41 above.

54. All contracts contain an implied covenant of good faith and fair dealing.

55. By simultaneously representing England, Midwest and Mat despite the obvious conflicts of interest, failing to advise England and Midwest of their claims against Mat and Stepansky and failing to provide an adequate defense in the Underlying Litigation and accepting attorneys' fees to which Defendants knew they were not entitled, Defendants breached the covenant of good faith and fair dealing.

56. As a proximate cause of Defendants' errors and omissions, England and Midwest suffered significant damages, including damages they would have recovered had the underlying lawsuit been properly litigated, damages in the form of attorneys' fees paid to Defendants for incompetent representation of England and Midwest and for

legal services rendered on behalf of Mat, for which they were not obligated, damages paid to subsequent counsel England and Midwest retained in the underlying lawsuit and damages in the form of the loss of certain trademark rights in the Iceman mark.

WHEREFORE, plaintiffs Corey J. England and Midwest Gems, Inc., respectfully request that this Court enter judgment in their favor and against Defendants in an amount o be proved at trial in excess of $75,000, plus interest, costs, and such further relief as is just and appropriate.

JURY DEMAND

Plaintiffs demand trial by jury.

COREY J. ENGLAND and<br>MIDWEST GEMS, INC.<br><br>By: /s/ Jacqueline A. Criswell<br>One of its Attorneys

Jacqueline A. Criswell (ARDC No. 6180148)
James Borcia (ARDC No. 6200926)
Tressler Soderstrom Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker
Chicago, IL 60606-6314
Phone: (312) 627-4003
Fax: (312) 627-1717

Local Counsel:

Robert T. Park (ARDC No. 02143585)
Synder, Park & Nelson, P.C.
1600 Fourth Avenue, Suite 200
P.O. Box 3700
Rock Island, IL 61204-3700
Phone: (309) 786-8497
Fax: (309) 786-0463

JAC:las:453492v5

# EXHIBIT A

This shall constitute the Agreement between Corey England, located at 501 15th Street, Moline, Illinois 61265 (Licensor) and NAT BROS. DIAMOND, INC., A NY CORP., located at 62 W. 47th Street, Suite 603, NY, NY 10036 (Licensee) regarding the license of the trademark "ICEMAN" (the Mark).

1. **TRADEMARK LICENSE:** Licensor hereby grants to Licensee an exclusive license to use the Mark on watches (the Product), by placing the Mark directly on the Product, on tags or labels affixed to the Product, and/or on displays associated with the Product. Licensee may use the Mark in advertisements for the Product; however, Licensee shall not associate the Mark with an individual character or person. No other license is granted herein regarding the Mark, nor is any license granted herein as to right of publicity in the indicia "ICEMAN".

2. **OWNERSHIP:** Licensor is the owner of the trademark "ICEMAN", an application for which is pending in the United States Patent and Trademark Office. Licensor further is the owner of publicity rights in the indicia "ICEMAN."

3. **CONSIDERATION:** In consideration for this license, and for all other rights granted herein, Licensee shall pay to Licensor an annual license fee of Twenty Five Thousand Dollars ($25,000.00) with the first years payment of this fee due upon execution of this agreement, the second years payment on May 30, 2004, and each subsequent years payment due on May 30th of each subsequent year, until termination. These payments shall be non-refundable in the event of subsequent termination.

4. **TERRITORY:** The license hereby granted herein is for the United States, its territories and possessions.

5. **TERM:** The Agreement shall be for an initial term of three years commencing on April 1, 2003. The Agreement shall be renewable for additional (2) year periods, upon all the terms and conditions contained herein, unless terminated by Licensor or Licensee, on notice given during the thirty (30) days prior to the expiration of a term.

6. **BRAND INTEGRITY:** Licensee shall use the Mark only as designated in Paragraph 1, and agrees to maintain the high quality of the Product at a level that meets the Standards of Licensor, which are the same as the Standards of the watches now produced by Licensee. Licensee shall provide actual samples of the Products subject to this License, to Licensor four (4) times a year, to ensure the quality of Products.

7. **DISPOSAL OF STOCK:** Upon termination or expiration of this license, Licensee may dispose of Products covered by this agreement which are in inventory, or have already been manufactured. However, Licensee may sell no more than six (6) months of Products, in inventory after termination or expiration of this agreement.

8. **TERMINATION:** Licensor shall have the right to terminate this agreement upon six (6) months prior written notice in the event of Licensee's breach of any material provision of this Agreement unless Licensee cures such breach within such six month period. The notice of termination shall specify the breach alleged to have occurred, and state of way of curing the breach. Licensee shall have the right to terminate upon six (6) months written notice.

9. **INFRINGEMENT:** Licensee agrees to promptly notify Licensor of (a) any unauthorized use of the Mark by third parties, and (b) any infringement or similar third party claims based against Licensee for Licensee's use of the Mark, as soon as any such use or claim may come to Licensee's attention. Licensor shall have the right to take action to obtain relief from such unauthorized use or claim. If Licensor does not take action promptly, against a bona fide infringer, Licensee will have the right to institute suit against such infringer. Licensee shall also have the right to defend itself in any litigation against it, concerning the Mark, and Licensor will cooperate in such litigation.

10. **NO PARTNERSHIP OR JOINT VENTURE:** Nothing herein shall be deemed to constitute Licensor or Licensee as joint ventures or partners for any purpose whatsoever. The relationship between the parties is limited to the purpose set forth herein.

11. **ENTIRE AGREEMENT:** This Agreement contains the entire agreement between the parties relating to the subject matter hereof, and supersedes all prior agreements or understanding between the parties relating to the subject matter, whether oral or in writing. The provisions of this Agreement may be amended, waived, or discharged solely by an instrument in writing signed by both parties.

12. **MISCELLANEOUS:** All notices required or permission to be given hereunder shall be deemed given if in writing, and sent by certified mail, return receipt requested, to the addresses set forth above for the parties hereof, or to such other addresses as the parties may in writing direct. This Agreement shall be binding upon the successors and assigns of both parties. Licensee shall not sub-license or assign any of its rights under this Agreement without the prior written consent of Licensor.

If the foregoing correctly sets forth our agreement, please indicate by signing below.

Very truly yours,

Corey England

By: _____
Dated: 5-20-03

LICENSEE
MAT BROS. DIAMOND INC.
By: _____
Dated: 5-21-03

EXHIBIT B



**Welcome**

**Attorney Search**

**Resources**

**Attorney Registration**

**E-Courts**

**Contact Us**

## *Attorney Detail*

**as of 03/12/2009**

**Registration Number:** 2177228

**KENNETH S. FELDMAN**
KENNETH S. FELDMAN
12 E 41ST ST FL 7TH
NEW YORK, NY 10017-6221
United States
(212) 532-8585

| | |
|---|---|
| **Year Admitted in NY:** | 1988 |
| **Appellate Division Department of Admission:** | 1 |
| **Law School:** | RUTGERS NEWARK |
| **Registration Status:** | Delinquent |
| **Next Registration:** | Sep 2010 |

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.